UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LENELL JORDAN, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 1:13-cv-01817-JMS-DKL |
| | ) | |
| CAROLYN W. COLVIN, *Acting Commissioner* | ) | |
| *of Social Security Administration*, | ) | |
| *Defendant.* | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Lenell Jordan applied for disability insurance benefits from the Social Security Administration ("SSA") on March 23, 2011. After a series of administrative proceedings and appeals, including a hearing in July 2012 before Administrative Law Judge ("ALJ") Angela Miranda, the ALJ determined that Mr. Jordan was not entitled to disability insurance benefits. In September 2013, the Appeals Council denied Mr. Jordan's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Mr. Jordan then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the

credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citation omitted) (alterations in original). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the

appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Jordan was fifty-two years old on the alleged onset date of his disability, March 3, 2011.  [Filing No. 7-2 at 19.]  He has a four-year degree in theology and past relevant work as a heavy equipment mover.  [Filing No. 7-2 at 19; Filing No. 7-2 at 40.]  Mr. Jordan suffers from spine and right shoulder impairments, which will be discussed as necessary below.[1]  He meets the insured status requirements of the Social Security Act through December 31, 2015.  [Filing No. 7-2 at 13.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on August 31, 2012.  [Filing No. 7-2 at 11-20.]  The ALJ found as follows:

- At Step One, the ALJ found that Mr. Jordan did not engage in substantial gainful activity[2] since the alleged onset date of his disability, March 3, 2011.  [Filing No. 7-2 at 13.]

- At Step Two, the ALJ found that Mr. Jordan suffered from the following severe impairments: cervical spine dysfunction; lumbar spine dysfunction; and right shoulder dysfunction.  However, the ALJ found that Mr. Jordan's obesity was non-severe.  [Filing No. 7-2 at 13-14.]

---

[1] Mr. Jordan detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts.  Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Jordan, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a).

- At Step Three, the ALJ found that Mr. Jordan did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Specifically, the ALJ concluded that neither Listing 1.02 (major dysfunction of a joint) nor Listing 1.04 (disorders of the spine) were met. [Filing No.7-2 at 14.] The ALJ also determined that Mr. Jordan had the residual functional capacity ("RFC") to perform light work.[3] [Filing No. 7-2 at 15.]

- At Step Four, the ALJ found that Mr. Jordan was unable to perform his past relevant work as a heavy machine operator. [Filing No. 7-2 at 18-19.]

- At Step Five, the ALJ found that Mr. Jordan could perform other jobs existing in the national economy such as an inspector. [Filing No. 7-2 at 19-20.]

Based on these findings, the ALJ concluded that Mr. Jordan was not disabled and thus not entitled to disability insurance benefits. [Filing No. 7-2 at 20.] Mr. Jordan sought review of the ALJ's decision from the Appeals Council, but it denied his request for review. [Filing No. 7-2 at 2-4.] Mr. Jordan's appeal from the Commissioner's decision is now before this Court.

### III.
### DISCUSSION

Mr. Jordan challenges the ALJ's decision on four bases, arguing that: (1) the ALJ did not adequately assess whether Mr. Jordan's spinal impairments met Listing 1.04(A); (2) the ALJ was required to but did not call a medical expert to testify whether Mr. Jordan's impairments met Listing 1.04 or any other listing; (3) the ALJ erroneously concluded that Mr. Jordan's allegations were not credible; and (4) substantial evidence fails to support the ALJ's RFC determination. [Filing No. 12 at 10-25.] The Court will address each argument in turn.

### A. The ALJ's Step-Three Assessment of Listing 1.04

Mr. Jordan maintains that the ALJ's step-three determination that his impairments did not meet a listing was erroneous because the ALJ only assessed whether his spinal impairments met

---

[3] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

the requirements of Listing 1.04(C), and did not assess whether they also met the requirements of Listing 1.04(A). [Filing No. 12 at 10-16.] Mr. Jordan points the Court to evidence that he contends shows that Listing 1.04(A) was met, and thus contends it was error for the ALJ to not even assess this evidence and Listing 1.04(A).[4] [Filing No. 12 at 11.]

The Commissioner argues that it is Mr. Jordan's burden to show that Listing 1.04(A) was met and that he has not met this burden. [Filing No. 17 at 12-17.] Specifically, the Commissioner details the treatment Mr. Jordan received from, and diagnoses provided by, two neurologists, and argues that both doctors failed to find that the requirements for Listing 1.04(A) were met. [Filing No. 17 at 13-16.]

Mr. Jordan replies that he has met his burden of demonstrating that Listing 1.04(A) was met and that "the ALJ erroneously analyzed his impairments under the wrong Listing, i.e., 1.04C instead of 1.04A." [Filing No. 18 at 3.] Moreover, Mr. Jordan argues that the Court cannot consider much of the medical evidence on which the Commissioner relies because the ALJ did not consider that evidence in reaching her decision. [Filing No. 18 at 5-6.]

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404,

---

[4] Mr. Jordan's briefing contains numerous, sporadic references to other propositions of law—e.g., the ALJ must "build an accurate and logical bridge from all of the evidence in the record to her conclusions," [Filing No. 12 at 13]—but he makes no attempt to explain how the propositions were violated in this case. Such undeveloped arguments are waived. *See Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) (noting that "an issue expressly presented for resolution is waived if not developed by argument") (citation omitted); *Johnson v. Astrue*, 2010 WL 1190123, *6 (S.D. Ind. 2010) (claimant waived argument where she merely provided a "string of block quotes from medical records . . . devoid of any legal analysis").

Subpt. P, App. 1). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Id.*; *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002) ("[The ALJ's] failure to discuss or even cite a listing, combined with an otherwise perfunctory analysis, may require a remand.").

At issue here is Listing 1.04, which provides as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The Court disagrees with Mr. Jordan that the ALJ's analysis of Listing 1.04 was deficient. Although the ALJ primarily focused on whether Listing 1.04(C) was met, contrary to Mr. Jordan's position, the ALJ also considered whether Listing 1.04(A) was met. The ALJ began by specifically citing Listing 1.04 and the three different ways the listing can be met. [Filing No. 7-2 at 14 ("Listing 1.04, disorders of the spine, requires evidence of nerve root compression with other clinical findings [subsection (A)], inflammation of the spinal membrane [subsection (B)], or spinal stenosis

with claudication resulting in the inability to ambulate effectively [subsection (C)]."].] She then primarily discussed whether there was evidence that Mr. Jordan could ambulate effectively—i.e., whether Listing 1.04(C) was met. [Filing No. 7-2 at 14.] However, the ALJ also concluded that "[t]he record does not show routinely positive straight leg raise results," [Filing No. 7-2 at 14; *see* Filing No. 7-2 at 15], which is a requirement of Listing 1.04(A), 20 C.F.R. Pt. 404, Subpt. P, App. 1 (stating that Listing 1.04(A) requires "[e]vidence of nerve root compression characterized by . . . positive straight-leg raising test").

Given that the ALJ specifically acknowledged the three ways Listing 1.04 can be met and concluded that evidence necessary to meet Listing 1.04(A) was not met (the positive straight-leg raising test), Mr. Jordan is simply incorrect that the ALJ failed to consider Listing 1.04(A). Unlike the authorities cited by Mr. Jordan, this is not a case where the ALJ made only a conclusory asser-tion that a listing was not met or did not mention the listing or relevant evidence at all. *See, e.g.*, *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (holding that the ALJ erred by "not men-tion[ing] Listing 1.04A" and by "not evaluat[ing] any of the evidence on its required criteria that is favorable to [the claimant]"); *Brindisi*, 315 F.3d at 786 (holding that the ALJ erred by "not even mention[ing] the specific listings under which it considered [the claimant's] impairments" and by omitting "any discussion of [the claimant's] impairments in conjunction with the listing"). Nota-bly, Mr. Jordan does not contend that the ALJ's conclusion that "[t]he record does not show rou-

tinely positive straight leg raise results," [Filing No. 7-2 at 14]—which makes Listing 1.04A inapplicable—was contrary to the evidence. He instead only argues that the ALJ did not consider Listing 1.04(A) at all, which as discussed above, is simply not true.[5]

Accordingly, the Court will not disturb the ALJ's step-three determination on the grounds that the ALJ failed to consider Listing 1.04(A).

### B.  The ALJ's Failure to Obtain Expert Medical Testimony on Equivalence

Mr. Jordan argues that the ALJ erred in not calling a medical expert to testify regarding whether he medically equaled Listing 1.04 or any other listing. [Filing No. 12 at 17-19.] Specifically, Mr. Jordan maintains that it was error for the ALJ to rely solely on the opinions of the State agency physicians because there was medical evidence obtained after they provided their opinions, which showed that Mr. Jordan met Listing 1.04.[6] [Filing No. 12 at 17-18.] The Commissioner responds that the ALJ properly relied on the State agency physicians' reports and explained why the subsequent evidence did not bear on the state agency physicians' conclusions. [Filing No. 17

_____

[5] In his opening brief, Mr. Jordan breaks out each requirement of Listing 1.04(A) and sets forth evidence corresponding to each requirement. [Filing No. 12 at 10-11.] As to the positive straight leg raise test, instead of citing record evidence, he states that "[t]he ALJ determined that he had 'positive straight leg raise' test" and cites the ALJ's opinion. [Filing No. 12 at 11 (citing Filing No. 7-2 at 15).] But the ALJ found the exact opposite, stating: "the subsequent evidence does *not* show consistent, positive straight leg raise." [Filing No. 7-2 at 15 (emphasis added).]

[6] Mr. Jordan also briefly argues that "[t]he ALJ cited no evidence regarding medical equivalence to a Listing but also simply assumed . . . that the claimant's combined impairments did not medically equal any Listing." [Filing No. 12 at 18 (citing Filing No. 7-2 at 25).] Not only does Mr. Jordan not sufficiently develop this argument, the Court has already concluded in Part III.A above that it is simply not true; the ALJ did not simply assume that Mr. Jordan did not meet a listing, as she explained the bases for her conclusion. The Court also notes that the page of the record cited by Mr. Jordan purporting to be the ALJ's opinion is not actually the ALJ's opinion. Mr. Jordan's counsel should take care to point the Court to the correct place in the record to ensure that his arguments can be properly considered.

at 17-19.]  Mr. Jordan replies by simply repeating the same arguments he made in his opening brief.  [Filing No. 18 at 8.]

 "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670.  An ALJ's reliance on disability forms filled out by state agency physicians "satisf[ies] the ALJ's duty to consider an expert's opinion on medical equivalence." *Id.* at 671; *see Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (holding that the disability forms filled out by the state agency physicians "conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review") (citation and quotation marks omitted); *see also* S.S.R. 96-6P at *3.

The ALJ denied Mr. Jordan's request to have a live medical expert testify at the hearing. [Filing No. 7-2 at 14-15.]  This additional evidence was unnecessary, reasoned the ALJ, because "[t]he record includes assessments by the State agency consultants . . . and their assessment did not contain any finding of medical equivalency to listing 1.04 or any other listing."  [Filing No. 7-2 at 14-15 (citing Filing No. 7-7 at 61-68; Filing No. 7-7 at 93).]  Moreover, the ALJ recognized that Mr. Jordan provided additional evidence after the state agency physician's assessments were completed, but that the subsequent evidence contained "little, if any, change from the evidence that was in the file at the time of the review by the State agency consultants," and "[n]otably . . . does not show consistent, positive straight leg raise, or ineffective ambulation."  [Filing No. 7-2 at 15.]

Contrary to Mr. Jordan's position, the Court cannot conclude that the ALJ was required to call a medical expert.  Although "an ALJ must consider an expert's opinion on [medical equivalence]," *Barnett*, 381 F.3d at 670, the ALJ's consideration of the State agency physicians' opinions

was sufficient to comply with this obligation, *see id. at 671*.  Moreover, Mr. Jordan cites no authority for the proposition that an ALJ cannot rely on the State agency physicians' opinions at all when there is relevant medical evidence obtained after the physicians' opinions were given.  [*See Filing No. 12 at 17*.]  Subsequently obtained evidence *could* cast doubt on the earlier opinions, but the ALJ addressed the evidence and concluded it did not impact the State agency physicians' opinions.  [Filing No. 7-2 at 15.]  Notably, Mr. Jordan does not explain what, if anything, about this conclusion is incorrect.  Indeed, regarding the subsequent evidence, Mr. Jordan states only: "[the ALJ] did not review the 7-4-12 medical-functional evaluation by [Mr. Jordan's] primary care physician, Dr. Hollingsworth MD. . . .  Presumably if [the ALJ] had reviewed all of the evidence [she] would have reasonably determined that [Mr. Jordan] was totally disabled."  [Filing No. 12 at 17 (citing Filing No. 7-7 at 104).]  This conclusory assertion falls well short of an argument explaining how the ALJ's specific analysis of the subsequent evidence was deficient.  Without such an argument, the Court has no basis to conclude that the ALJ erred.

In sum, Mr. Jordan has not demonstrated that the ALJ's reliance on the medical expert evidence in the record was inappropriate.  And when "[t]he record contain[s] adequate information for the ALJ to render a decision[,] [her] decision not to obtain . . . further information" is not error.  *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007); *see Dye v. Astrue*, 2012 WL 4514108, *9 (S.D. Ind. 2012)* ("[W]hen the medical evidence in the record is sufficient to make a decision, the ALJ may rely on it alone.").  Accordingly, reversal is not warranted due to the ALJ's decision not to call a medical expert.

C.      The ALJ's Adverse Credibility Determination

Mr. Jordan contends that the ALJ's adverse credibility determination was erroneous in that the ALJ relied on "the same boilerplate credibility determination" the Seventh Circuit has criticized without articulating "any legitimate reason for her credibility determination."  [Filing No. 12 at 20-23 (citing *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).]  The Commissioner acknowledges that the Seventh Circuit has criticized the boilerplate language used by the ALJ here, but argues that the use of it is not reversible error because the ALJ went beyond the boilerplate language and explained why Mr. Jordan's complaints were not credible by citing contrary medical evidence.  [Filing No. 17 at 19-20 (citing *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013)).]  Mr. Jordan replies that *Pepper* is inapplicable because, unlike in *Pepper*, the ALJ here did not sufficiently point to evidence beyond the boilerplate language to justify her credibility determination.  [Filing No. 18 at 11-12.]

The ALJ's credibility determination is typically entitled to special deference.  *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, the Seventh Circuit has recognized that "the resolution of competing arguments based on the record is for the ALJ, not the court."  *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002).  In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for

the finding on credibility, supported by the evidence in the case record." *Prochaska v. Barnhart,*
*454 F.3d 731, 738 (7th Cir. 2006)*.

The ALJ first set forth Mr. Jordan's RFC as limited to light work with additional postural
and manipulative limitations that the ALJ set forth in detail. [Filing No. 7-2 at 15.] At the hearing,
Mr. Jordan had testified that he has "extensive limitations" in his ability to move and ambulate.
[Filing No. 7-2 at 16.] Regarding Mr. Jordan's testimony, the ALJ began with the boilerplate
credibility language often used by ALJs:

> After careful consideration of the evidence, I find that the claimant's medically de-
> terminable impairments could reasonably be expected to cause the alleged symp-
> toms; however, the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are unpersuasive to the extent they are incon-
> sistent with the above residual functional capacity assessment.

[Filing No. 7-2 at 16.] However, the ALJ then conducted a lengthy year-by-year analysis of the
medical evidence from 2010 to 2012, and explained how the medical evidence "does not support
the level of limitation alleged by [Mr. Jordan]." [Filing No. 7-2 at 16-18.]

Mr. Jordan is correct that the above quoted language used by the ALJ is the exact credibility
boilerplate language criticized by the Seventh Circuit. *See Bjornson*, 671 F.3d at 644-45. This
boilerplate language is disfavored because, among other reasons, it "puts the cart before the horse,
in the sense that the determination of [RFC] must be based on the evidence . . . rather than forcing
the [claimant's] testimony into a foregone conclusion"; but the Commissioner is correct that the
use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Filus*
*v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).* "If the ALJ has otherwise explained his conclusion
adequately, the inclusion of this language can be harmless." *Id.*; *see Pepper, 712 F.3d at 367-68*
("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or

discredit the ALJ's ultimate conclusion if [s]he otherwise points to information that justifies h[er] credibility determination.").

Here, like in *Filus* and *Pepper*, the ALJ provided a lengthy explanation, which included numerous citations to the record, as to why Mr. Jordan's testimony was not credible. [Filing No. 7-2 at 16-18.] For example, the ALJ rejected Mr. Jordan's allegations of "profound manipulative limitations" because medical evidence showed that his limitations were "mild" and that he was prescribed "a conservative course of care." [Filing No. 7-2 at 17-18.] Therefore, although the use of this boilerplate language is inappropriate and should not be used, its inclusion in this case was harmless. *Filus*, 694 F.3d at 868. In short, Mr. Jordan's assertion that the ALJ failed to articulate "any legitimate reason for her credibility determination," [Filing No. 12 at 20], once again simply ignores the ALJ's decision. Accordingly, reversal is not warranted on this basis.

**D.     RFC Determination**[7]

Mr. Jordan argues that the ALJ's decision must be reversed because she "did not accurately describe [Mr. Jordan's] impairments." [Filing No. 12 at 24-25.] Specifically, Mr. Jordan contends that the ALJ "refused to acknowledge evidence which proved his spinal impairments met or equaled Listing 1.04A," and "arbitrarily rejected the evidence of total disability as shown by his receipt of pension disability benefits . . . and by the 4-1-11 medical functional evaluation by his treating physician Dr. Hollingsworth MD." [Filing No. 12 at 24.] The Commissioner responds that the ALJ properly relied on the State agency physicians' opinions in reaching Mr. Jordan's RFC, and also added additional limitations based on other evidence. [Filing No. 17 at 20.] As to the evidence Mr. Jordan maintains was not considered, the Commissioner argues that the pension

_____

[7] Mr. Jordan characterizes this issue as a challenge to the ALJ's step-five determination. [Filing No. 12 at 24.] But because the specific arguments he makes relate the ALJ's RFC decision, [Filing No. 12 at 24], the Court classifies the challenge as such.

- 13 -

disability benefits determination uses a different disability standard and is not binding on the ALJ. [Filing No. 17 at 21.] In reply, Mr. Jordan merely states that the Commissioner's argument "ignores that the ALJ's RFC and Step 5 determination failed to consider [Mr. Jordan's] . . . disability under Listing 1.04A." [Filing No. 18 at 13.]

"Although the ALJ need not discuss every piece of evidence in the record, [s]he must confront the evidence that does not support h[er] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, the ALJ "may not ignore entire lines of evidence" or "fail[] to take into account . . . diagnosed physical impairments." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

First, Mr. Jordan's argument regarding Listing 1.04(A) was addressed in Parts III.A and III.B above and need not be repeated here. The Court already concluded that the ALJ properly assessed whether Listing 1.04 was met, thus this does not provide grounds for reversal.

Second, Mr. Jordan's argument that the ALJ "arbitrarily rejected" the evidence regarding Mr. Jordan's receipt of pension disability benefits and Dr. Hollingsworth's medical functional evaluation is unavailing. [Filing No. 12 at 24.] The ALJ specifically addressed both of these lines of evidence, stating:

> The evidence from mid-2011 includes medical source opinions of weakness and disability, but the objective evidence weighs against those. Dr. Hollingsworth assessed weakness in the extremities due to degenerative changes in all regions of the spine, indicated the claimant could not sustain gainful activity, and alleged total disability. [Filing No. 7-7 at 78-79.] However, Dr. Hollingsworth found a normal gait and no lumbar tenderness. This evidence undermines his assessment of disability pursuant to the regulatory requirements for Social Security. [Filing No. 7-7 at 78-79; Filing No. 7-7 at 86-90.] In June 2011, the IBEW awarded the claimant a disability pension, which I have considered in light of the requirements of SSR 06-03p. The award of benefits under another standard of disability does not, by itself, constitute grounds for the award of Social Security disability benefits (SSR 06-03p). . . . Rather, it is only one factor in a more complete examination of the record overall. A report from Dr. Hollingsworth showed a normal gait, no tenderness of the lumbar region, and no edema of the extremities. [Filing No. 7-7 at 81-

85.] This evidence is contrary to the claimant's allegations and Dr. Hollingsworth's assertions of disability.

[Filing No. 7-2 at 17.] The ALJ's discussion makes clear that she considered both the pension disability benefits award as well as Dr. Hollingsworth's assessments, but found them contrary to other record evidence. [*See* Filing No. 7-2 at 18.] Indeed, the ALJ explains further that she gave "significant weight" to the State agency physicians' opinions and "limited weight" to Dr. Hollingsworth's opinion, as the record evidence, including an otherwise conservative course of treatment, "undermines the limitations assessed by Dr. Hollingsworth." [Filing No. 7-2 at 18.] Therefore, Mr. Jordan's argument that the ALJ "arbitrarily rejected" this evidence is simply not true; the ALJ "confront[ed] the evidence that d[id] not support h[er] conclusion and explain[ed] why it was rejected," as she was required to do. *Indoranto*, 374 F.3d at 474.

Accordingly, Mr. Jordan has not provided the Court with a basis to overturn the ALJ's decision.

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Mr. Jordan to overturn the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

September 2, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**